# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

**UNITED STATES OF AMERICA**  **CASE NO. 6:14-CR-00203-02**

**VERSUS**  **JUDGE DEE D. DRELL**

**ELLIOT JOLET (02)**  **MAGISTRATE JUDGE HANNA**

## REPORT AND RECOMMENDATION

Before the court is the Motion for Relief Under Rule 60(b), filed by defendant Elliot Jolet. [Rec. Doc. 546]. The Government filed a response on October 28, 2019. [Rec. Doc. 598]. Defendant sought two extensions of time in which to file a reply to the Government's opposition [Rec. Docs. 599, 620], which were granted by the Court [Rec. Docs. 601, 620], yet no reply has been filed and the filing deadlines have expired. Accordingly, the matter, which has been referred to the undersigned Magistrate Judge for review, report, and recommendation, is now ripe for review.

## I. FACTUAL BACKGROUND

### A. *The Plea*

The record reveals that Elliot Jolet and thirteen co-defendants were charged in a twenty-count indictment arising out of a conspiracy to distribute methamphetamine. [Rec. Doc. 1]. On August 12, 2015, Jolet, with the assistance of court-appointed counsel, Michael Piccione, entered a guilty plea to Count 1 of the

indictment, Conspiracy to Distribute Methamphetamine, at which time he admitted, under oath in open court, his role in the offense. [Rec. Doc. 297-2]. Jolet admitted that he conspired with co-defendants to purchase and transport methamphetamine from Texas to Louisiana for further distribution, that he pooled money together with co-defendant Anita Desormeaux to purchase the methamphetamine in Texas and that he regularly teamed up with co-defendant coconspirators to store methamphetamine in Louisiana. [*Id*.] He described how they broke down the larger amount of methamphetamine purchased to sell in smaller quantities for a profit in Louisiana and admitted to typically transporting eighteen (18) ounces of methamphetamine at a time from Texas on a regular basis. [*Id*.] Jolet admitted to specifics, including that he was involved in recrystallizing the methamphetamine before distribution and engaging in counter-surveillance techniques and that he communicated with his co-conspirators through voice calls and text messages. [Rec. Doc. 297-2]. In the factual stipulation that he signed, and that was orally pronounced before the Court line-by-line, Jolet acknowledged these calls and text messages were recorded by the DEA through authorized wiretaps, which he would have reviewed in discovery with his attorney and that these recorded phone calls and text messages reveal the details of the purchase and transportation of large amounts of methamphetamine. [*Id*.] Finally, Jolet admitted that he conspired to distribute at least 1,500 grams of methamphetamine during the conspiracy, but not more than 4,500 grams. [*Id*.]

2

The presentence report was issued on October 29, 2015, and Jolet's guideline range was calculated at 235 to 293 months. [PSR ¶ 82].  Despite a prior drug felony, a Title 21, Section 851 enhancement was not filed by the United States. [PSR ¶ 49].

### B. Notice of Allegations Against Jason Comeaux

Prior to that guilty plea, on March 6, 2015, a letter (hereinafter referred to as "the March 2015 letter") was sent to all defendants, through their respective attorneys, advising of allegations made by a State of Louisiana inmate against Jason Comeaux, a Drug Enforcement Agency (DEA) Task Force Officer employed by the Iberia Parish Sheriff's Office. [Rec. Doc. 598-1]. The letter acknowledged that Comeaux was a law enforcement officer that participated in the underlying investigation, and that based on these allegations from an Iberia Parish inmate, a referral had been made to the Civil Rights Division of the United States Department of Justice and referred to the specific pending lawsuit. This letter was received by all attorneys enrolled in the case, and as the Government notes, no defendant persisted in trial or filed any pre-trial motions related to the Comeaux allegations or investigation.

### C.  Sentencing and Post-Sentencing Incarceration

On December 8, 2015, the United States recommended a downward departure and a sentence of 180 months, and the Court ultimately granted the request and imposed a below Guideline range sentence of 180 months. [Rec. Doc. 396]. The

Judgment of Conviction was entered on December 10, 2015. [Rec. Doc. 398]. Jolet was advised of his right to appeal [rec. doc. 396, p.2], but did not file appeal.

Notably, the Government points out that according to the United States Marshal Service, Jolet was housed at the Iberia Parish Sheriff's prison during almost the entirety of his federal pre-trial detention, from December 3, 2014, to January 8, 2016. [*See* Rec. Doc. 598, pp. 4-5]. Furthermore, prior to filing a writ to bring Jolet into federal custody, he was housed on state charges at the same Iberia Parish facility. [*Id*.] After living at the epicenter of the allegations and investigation of Comeaux and other Iberia Parish officers for well over a year, Jolet was designated to a Bureau of Prisons facility in Pollock, Louisiana near Alexandria, Louisiana. [*Id*.]

### D. Rule 60 Motion

The Rule 60 motion presently before this Court was filed on December 11, 2018. [Rec. Doc. 546]. Jolet alleges that he did not know that DEA Task Force Officer Jason Comeaux was under investigation and ultimately pled guilty to federal civil rights violations and that knowledge of that fact would have resulted in a different outcome in his case.

## II.    LAW AND ANALYSIS

### A. *Nature of Relief Sought*

Jolet has filed a pro se motion styled as a Motion for Relief pursuant to Federal Rule of Criminal Procedure Rule 60, although he actually seeks relief under Federal Rules of Civil Procedure, Rule 60, which authorizes relief from civil judgment on certain enumerated grounds. [Rec. Doc. 546, p. 2-4]. Criminal Rule 60 pertains to victims' rights and is inapplicable to this case. Likewise, Civil Rule 60 is inapplicable in this criminal context. Rather, Jolet seeks to have his conviction and sentence vacated.  [*Id.* at p. 22].

> [A] court will sometimes recharacterize a motion filed by a pro se prisoner as a request for habeas relief under § 2255 even though the motion is labeled differently.
>
> "[P]ro se habeas petitions are not held to the same stringent and rigorous standards as are pleadings filed by lawyers." Ultimately, "[i]t is the substance of the relief sought by a pro se pleading, not the label that the petitioner has attached to it, that determines the true nature and operative effect of a habeas filing."

*United States v. Elam*, 930 F.3d 406, 409 (5th Cir. 2019), *citing Castro v. United States*, 540 U.S. 375, 377 (2003), and *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) (per curiam).

The Fifth Circuit has held that these Rule 60 motions should be treated as a motion pursuant to 18 U.S.C. § 2255. *See United States v. Rich*, 141 F.3d 550, 551-554.

5

**B. *Jolet's Section 2255 Motion is Untimely***

Motions filed under 28 U.S.C. § 2255 are subject to a one-year statute of limitations. This period runs from the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution Case or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Petitioner's conviction became final on December 24, 2015, fourteen days (excluding holidays and weekends) after petitioner's judgment of conviction was entered on this Court's docket.  *See United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008).  Petitioner therefore had one year, or until December 24, 2016, to file his § 2255 Motion in this Court.  The instant Motion was not placed in the mail until December 6, 2018. [Rec. Doc. 546, p. 23]. Thus, it is clear that petitioner's claims cannot be considered under the period established by 28 U.S.C. § 2255(f)(1). Rather, petitioner must rely on one of three statutory exceptions to the general rule

which can, in appropriate cases, extend the time for filing a § 2255 motion beyond the one-year period after final conviction. *See* 28 U.S.C. § 2255(f)(2)(3) and (4).

Petitioner does not claim that the Government created an impediment to filing his motion or that the Supreme Court recognized a new right made retroactively applicable to cases on collateral review. Thus, subsections (2) and (3) are inapplicable.

While not specifically invoking § 2255(f)(4), which provides that the federal one-year limitation period begin to run from "the date on which the facts supporting the claim . . . could have been discovered through the exercise of due diligence," petitioner appears to rely on this provision in arguing for the Court to extend the time for filing his motion. The Supreme Court has explained that "diligence can be shown by prompt action on the part of the petitioner as soon as he is in a position to realize" that action is necessary. *Johnson v. United States,* 544 U.S. 295, 308 (2005). The Court has further noted that in evaluating a claim under § 2255(f)(4), "the important thing is to identify a particular time when ... diligence is in order." *Id.*

Here, the new evidence on which Jolet's claim relies is Comeaux's conviction and Jolet's allegation that he was completely unaware of the civil rights investigation against Comeaux and Iberia Parish officers. Accordingly, the relevant date for determining whether the defendant exercised "diligence" and "prompt action" is March 8, 2016, the day that Comeaux's investigation ended and his guilty plea was

7

entered on the docket as publicly available information. *See United States v. Rodriguez,* 858 F.3d 960, 962-64 (5th Cir. 2017) (holding that the limitations period of petitioner's § 2255(f)(4) motion began to run when the petitioner could have learned of counsel's failure to appeal, not when petitioner actually discovered that fact).

Jolet does not allege a specific date that he learned of Comeaux's conviction, only that it has been brought to his attention. [See Rec. Doc. 546, p.6]. He contends that he could not have discovered that Comeaux had been investigated or convicted of civil rights violations sooner, because the Government did not inform him or his counsel, Mr. Piccione, of any such issues involving Comeaux, an allegation which is refuted by the March 2015 letter sent by the Government to all counsel, discussed above.

Insofar as Jolet's Motion is premised upon Comeaux's civil rights conviction and his delayed knowledge of same, the Government points out that the U.S. Attorney's Office for the Western District of Louisiana announced his guilty plea in a press release the day after it was entered, and that release was posted on the district's website.[1] As Comeaux's plea was part of a larger investigation involving multiple local law enforcement officers, his case garnered substantial media

---

[1] *See* https://www.justice.gov/usao-wdla/pr/sheriff-and-lieutenant-colonel-new-iberialouisiana-charged-conspiracy-assault-inmates (link valid September 20, 2019).

attention, both on local television and radio new outlets, and in print newspapers.[2] *See e.g., Rivas v. Fischer*, 687 F.3d 514, 536 (2d. Cir. 2012) (for purposes of determining whether a § 2244 claim was timely under an equivalent statutory tolling provision in that habeas statute, relying on the fact that newspaper publicity would have allowed the petitioner to discover relevant facts through the exercise of due diligence); *United States v. Osmanson*, 2014 WL 5587009 at *7-9 (D. Vt. 2014) (holding that the date of press coverage accessible to an incarcerated prisoner could serve as a starting point for a § 2255(f)(4) analysis because he could have discovered those stories "with only minimal due diligence"). National news agencies published stories as early as 2016.[3]

As the Government notes, Jolet has resided in Louisiana all of his life. [PSR ¶ 64]. His parents, family and friends all reside in New Iberia, Louisiana and the surrounding areas. [PSR ¶ 62-64]. Jolet indicates in his Rule 60 motion that he has stayed in contact with his family, who, as life-long residents of the New Iberia area, have had access to local news. [Rec. Doc. 546, p. 7, ¶¶ 2-3]. In federal prison, Jolet has had continuous access via telephone and email to family and friends, so he indirectly had access to local events and Comeaux's highly publicized case, and the

---

[2] *See e.g.,* https://www.theadvocate.com/acadiana/news/crime_police/article_a3af6773-2f37-5809-affe823203516a18.html (from a major regional newspaper); https://www.iberianet.com/news/two-more-guilty-pleas/article_55a566c6-e60f-11e5-81fd63aa49f3f742.html (from the newspaper in the city where Comeaux served as a deputy); https://www.wwltv.com/article/news/iberia-sheriff-indicted-on-civil-rightsviolations/76129486 (regional coverage from New Orleans); and http://kpel965.com/twomore-iberia-parish-deputies-plead-guilty-civil-rights-violations/ (from a local radio station)

[3] https://www.nbcnews.com/news/us-news/shocking-trial-louisiana-sheriff-cleared-civil-rights-abuses-n678031

related pending charges and ultimate publicized trial against Iberia Parish Sheriff Louis Ackal. Similarly, his family and friends, who contacted the Nationwide Legal Assistance Group and who repeatedly attempted to contact Mr. Piccione could have easily inquired about these new stories. [See Rec. Doc. 546, p.7].

Moreover, the Government represents that every co-defendant with whom Jolet was incarcerated during his pre-trial detention at the Iberia Parish jail received the letter notifying them of the U.S. DOJ Civil Rights investigation of Comeaux. Notably, Jolet lived in the Iberia Parish jail for approximately 400 days during the Comeaux investigation while in federal custody, before that on state charges, and would have been in close quarters and had daily interactions with other inmates and co-defendants who were well aware of the civil rights investigations at the Iberia Parish Jail.

Jolet's motion was filed 33 months after Comeaux's guilty plea, well beyond the one-year period for filing.  The Court agrees with the Government's contention, that it is inconceivable that Jolet did not learn of the rumors or allegations while incarcerated at the Iberia jail while in state or federal custody, or did not learn about it through email and telephonic communication with family and friends who have always and continue to reside in New Iberia, Louisiana and the surrounding area. With this direct and circumstantial knowledge, Jolet could have easily, with minimal effort, monitored and pursued these known rumors or allegations and accessed this

information through due diligence with the resources available to him, and filed a timely motion.

Moreover, petitioner is not entitled to equitable tolling. The Fifth Circuit has held that the statute of limitations in § 2255 may be equitably tolled in "rare and exceptional circumstances." *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) *quoting Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998). However, a litigant is entitled to equitable tolling only if he establishes: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755 (2016) (*quoting Holland v. Florida*, 560 U.S. 631, 649, (2010)). The record does not support equitable tolling of the statute of limitations in the instant case. Jolet alleges no extraordinary circumstances so as to provide a basis for equitable tolling. Moreover, even if did, he has not shown that he pursued his rights diligently, or that any alleged extraordinary circumstances prevented him from timely filing his claims.

## C. Even if Jolet's Motion was timely, it is without merit.

### a. Brady Claim

Jolet alleges that the United States failed to disclose the investigation against Comeaux to him or his attorney, and that this is a violation of *Brady v. Maryland,* 373 U.S. 83, 87 (1963). [Rec. Doc. 546, p. 9, 16]. To establish a *Brady* violation

11

the defendant must prove that (1) the prosecution actually suppressed the evidence, (2) the evidence was favorable to him, and (3) the evidence was material. *Reed v. Stephens*, 739 F.3d 753, 781 (5th Cir. 2014). "A petitioner's *Brady* claim fails if the suppressed evidence was discoverable through reasonable due diligence." *Id.* (citing *United States v. Brown,* 650 F.3d 581, 588 (5th Cir.2011), *cert. denied*, —— U.S. ——, 132 S.Ct. 1969, (2012)). "Suppressed evidence is material if 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.'" *Id.* (citing *United States v. Bagle*y, 473 U.S. 667, 682 (1985)).

> The Government is not required…to facilitate the compilation of exculpatory material that, with some industry, defense counsel could marshal on their own." … '[W]hen information is fully available to a defendant at the time of his trial and his only reason for not obtaining and presenting the evidence to the court is his lack of reasonable diligence, the defendant has no Brady claim.'

*United States v. Runyan*, 290 F.3d 223, 246 (5th Cir. 2002) (citations omitted).

The Government contends that it did not suppress any evidence. Rather, the Government, through Assistant US Attorney, Mr. Namie, sent a letter to Mr. Piccione advising of the civil rights investigation and the pending civil suit against Comeaux, providing the docket number (the March 2015 letter). [Rec. Doc. 598-1]. The Court agrees that the Government was under no further obligation to provide Jolet, through his counsel or otherwise, of updates in the case(s) against Comeaux,

particularly where the circumstances were well-publicized. Further, although the evidence of Comeaux's civil rights violations might have been favorable to Jolet as impeachment evidence, the Court is not convinced that the evidence was material. Jolet knowingly admitted to each of the underlying facts supporting his conviction at the guilty plea hearing. [Rec. Doc. 297-2].

In addition to all of this evidence, Jolet confessed to his involvement and entered into a *Kastigar* agreement with the United States where he provided details about his role and the conspiracy.[4]  The Government argues, and the Court agrees, that considering the admissions made in open court during Jolet's guilty plea, impeaching Comeaux would not have changed the outcome of the case. Methamphetamine attributable to Jolet was seized by multiple officers in this case. Additionally, there would have been several other DEA agent witnesses who assisted Task Force Officer Comeaux and who stood prepared to testify. Furthermore, all defendants pled and cooperated and would have testified against Jolet regarding the details of the conspiracy as they similarly admitted to in their respective factual stipulations. There is no indication that the United States would have had to call Comeaux as a witness at all in its case-in-chief to prove Jolet's involvement and methamphetamine distribution. Jolet cannot establish a right to relief under *Brady*

---

[4] The Government notes that while the United States could not have used the *Kastigar*-protected information in its case-in-chief, it could have been used to impeach Jolet had he testified in a contrary way.

13

because nothing was suppressed, and he has failed to make a showing that the outcome would have been different if he had been able to call Comeaux as a witness.

### b. *Action by the Government*

Finally, Jolet alleges that while the State of Louisiana took action regarding the Comeaux investigation and conviction, the United States did not. The Government counters, citing to the aforementioned March 2015 letter sent to all counsel of record, well before Comeaux's guilty plea. This notification, in addition to the fact that Comeaux was removed from the case before the letter was sent, which was before any guilty pleas were accepted in this case, refute any contention that the Government chose to "sweep this issue under the rug with the hopes that nobody was informed." [*See* Rec. Doc. 546 p. 21.]

## III. EVIDENTIARY HEARING

The court must grant an evidentiary hearing on a §2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *e.g., United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992). No evidentiary hearing is required where the defendant's claims are "either contrary to law or plainly refuted by the record." *United States v. Green*, 882 F.2d 999, 1008 (5th Cir. 1989). Jolet has pointed to no contested factual issue material to his claims. As set forth above, the filings and record conclusively demonstrate that he is not entitled to relief. Therefore, no hearing is required.

## IV.   CONCLUSION

For these reasons,

**IT IS RECOMMENDED** that Jolet's Motion for Relief from Judgment Pursuant to Rule 60 of the Federal Rules of Criminal Procedure be analyzed and treated as Motion to Vacate Conviction and Sentence Pursuant to 28 U.S.C. §2255 [Rec. Doc. 546] be **DENIED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.   See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE in Chambers on this 17th day of June, 2020.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE